McBRIDE, Judge.
Plaintiff and defendant were neighbors and long-time friends who decided to construct a boat to be used jointly by them for the purposes of hunting and fishing. The plaintiff, Prevost, is a carpenter and cabinetmaker by trade and the defendant, Bergeron, is a mechanic. The boat was constructed in a workshed adjoining the property and residence of the plaintiff at Harahan, Louisiana. Construction work was begun during February 1950, and the boat was launched about three months later. The evidence shows that Prevost performed about seventy-five percent of the work on the boat and furnished most of the tools and electrical power used in the construction project. Bergeron, in his role of mechanic, supervised and performed most of the work connected with the installation of the motor. The boat is characterized as an open runabout measuring 15% feet in length and equipped with a 60-horsepower engine. After the boat was completed and named “Dos Gris,” it was placed at a cainp in the Parish of Pla-quemines where it was used jointly by both parties for a period of more than a year. During all of that time there seemed to have been no disagreement as to the ownership of the boat. According to Prevost, in about March 1952, he advised Bergeron that the cost of maintaining the boat was too much for him to bear and that he, Prevost, desired to sell his one-half interest in the boat. Also, according to Prevost after some negotiations between the parties as to the value of a one-half interest in the boat, Bergeron refused to pay Prevost his half and took the position that Prevost had no interest in the boat. With this state of affairs existing, the plaintiff filed this suit in the Twenty-fifth Judicial District Court for the Parish of Plaquemines alleging that he was the owner of an undivided one-half interest in the boat, and prayed that his ownership in said proportion be recognized, and for a partition by licitation, and for a writ of sequestration commanding the Sheriff of Plaquemines Parish to sequester and hold the boat subject to the further orders of the court.
The boat was seized and the matter was, in due time, tried in the court below and there was judgment in favor of plaintiff as prayed for; the judgment also maintained the writ of sequestration previously issued. Defendant, Bergeron, has taken this appeal from that judgment.
Defendant’s answer denies all of plaintiff’s allegations. On the day the case was called for trial below defendant interposed an exception of no cause or right of action which was overruled. This exception is now reurged before us.
The exception is grounded first, on the contention that plaintiff’s affidavit for the writ of sequestration does not conform to the requirements of Art. 276, Code of Practice, in that it does not set forth the cause for which plaintiff claimed and sought the writ; second, that defendant obtained a Certificate of Award from the United States Coast Guard setting forth the fact that the boat is registered in the name of the defendant and names defendant as the owner thereof. The exception is without merit and was properly dismissed.
Where the petition is sworn to and the allegations in the petition authorize the sequestration, the affidavit is sufficient. Irving v. Edrington, 41 La.Ann. 671, 6 So. 177; Lannes v. Courege, 31 La.Ann. 74. The petition alleges that plaintiff fears that the defendant may part with, conceal, or remove said boat from the jurisdiction of the court pending the trial of the matter, and that a writ of sequestration is necessary to protect plaintiff’s rights. This allegation conforms with paragraphs 2 and 8 of C.P. art. 275 and LSA-R.S. 13:4001. The affidavit recites that all the allegations contained in the petition are true and correct.
 Defendant takes the position that the Certificate of Award which he obtained *403 ex parte from the United States Coast Guard establishes unassailable ownership of the boat in him. With this we do not agree. It is true that the United States Coast Guard has full jurisdiction over undocumented vessels and manifestly Congress placed such jurisdiction in the Coast Guard for purposes of national security and safety. A certificate issued by this department of the Federal Government showing that a vessel is registered in accordance with the Act of Congress in no wise vests ownership in the name of the registrant. The case of National Oil Transport Co. v. United States, D.C., 18 F.2d 305, 309, is authority for our conclusion. In that case the Court said:
“The registry of vessels only regulates the national character of the vessel, and does not furnish evidence of ownership, and a change of papers is not necessary to vest title in her purchaser. It is not even' prima facie evidence in favor of the party named therein as owner. Begley v. Morgan, 15 La. 162, 35 Am.Dec. 188; Bradbury v. Johnson, 41 Me. 582, 66 Am.Dec. 264; Ring v. Franklin, 2 N.Y.Super.Ct. 9; United States v. The Amistead [15 Pet. 518], 40 U.S. 518, 594, 10 L.Ed. 826.”
Of course, in a case such as this it can be expected that the testimony of the one party is diametrically opposed to the testimony of the other. Plaintiff admits that Bergeron purchased in his own name most of the materials that went into the boat and this for the reason that Bergeron conducted an automobile repair shop and was in a position to obtain the materials at reduced prices. Plaintiff’s story is that he reimbursed the defendant for one-half of defendant’s outlay for the materials. The evidence shows that all receipts and bills were kept in a file in the plaintiff’s garage. Such bills were introduced into evidence, and an inspection of the documents reveals that about ninety percent of them bear the signature “Bud” at the bottom and the rest bear the signature “Bert.” This seems to corroborate plaintiff’s testimony that such system was employed for the purpose of keeping a record of the amounts expended by the respective parties, and that at intervals they would calculate the amount each had expended and make an accounting between themselves, whereby the one spending the most money would be reimbursed by the other so as to equalize things. Defendant denied this, but was unable .to give any reasonable or logical explanation as to why the receipts were kept in Prevost’s shed. He could not explain why he signed some of the receipts “Bud,” except to say that he always placed his signature on bills that had been paid. It might be mentioned that “Bud” was the agnomen of defendant; “Bert” is the Christian name of the plaintiff.
There is a bit of evidence in the record which tends to throw some light on the question of ownership of the boat. Defendant named the boat “Dos Gris” in order to please the plaintiff. Defendant had wanted to name it “Evette II” after his daughter; plaintiff objected as he also had a daughter.
Plaintiff produced two witnesses who testified to the effect that defendant admitted to them that Prevost owned a one-half interest in the boat. One of these witnesses, who admittedly was friendly with both parties, went a step further and stated that he had attempted to purchase an interest in the boat and that Bergeron had told him that Prevost would have to agree to any such transaction because he and Prevost had án agreement that neither would sell an interest without the consent of the other.
To substantiate his contention that Berg-eron at one time had agreed to buy plaintiff’s share in the boat, Prevost introduced into evidence an uncashed check for $75 made payable to Prevost and signed by Bergeron; this check, says Prevost, was a partial payment by Bergeron to him for his interest in the boat. Defendant countered that the check had nothing'to do with any transaction concerning the boat, but was *404 payment for certain furniture repair work Prevost had made for him.' This statement of Bergeron was denied by Prevost who rejoined that he repaired three pieces of Bergeron’s furniture without charge.
Seeking to refute defendant’s statement that plaintiff had advanced no money for the building of the boat, Mrs. Prevost testified that she saw her husband take approximately $200 in cash out of the house on the night the motor was delivered and that she saw him walk with the money out to the workshed.
Mrs. Prevost and another witness testified to the effect that they witnessed the building of the boat from the inception of operations, and they. understood that the entire scheme was that the boat was to be the joint property of both parties.
In support of Bergeron’s defense, he produced two witnesses whose testimony is to the effect that they believed the boat belonged to Bergeron, but their belief was predicated only on statements made to them by Bergeron that he was the owner of the boat.
Even eliminating from all consideration the testimony given by Prevost that he had paid for one-half of the cost of materials used in the boat-building project, we still could not believe that Prevost was to be recompensed for the use of his tools, the electrical energy, and his labor over a three-month period by merely having the right to use the boat when he desired to do so.
The trial judge saw and heard the witnesses testify, and his conclusion was that plaintiff had borne the burden of proving his case by a préponderance of evidence. He-believed plaintiff and his witnesses. Not only do we find no manifest error in the judgment, but our opinion is that the judgment is the only one which the evidence would justify.
Therefore, the judgment appealed from will be affirmed.
Affirmed.